Scott DUFFY, Petitioner,

v.

The STATE of Wyoming, Respondent.

Scott DUFFY, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

Nos. 91–52, 91–61.

Supreme Court of Wyoming.

July 28, 1992.

Martin J. McClain, Tallahassee, Fla., for Scott Duffy.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Jennifer L. Gimbel, Sr. Asst. Atty. Gen., Larry M. Donovan, Sr. Asst. Atty. Gen., for the State.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT,* MACY and GOLDEN, JJ.

THOMAS, Justice.

The key issue in this case is whether Scott Lee Duffy (Duffy) was the victim of ineffective assistance by his appointed trial counsel who allegedly failed to advise him of the prospect of consecutive sentencing prior to the entry of his pleas of guilty. Duffy has endeavored to structure a *cause célèbre* by claiming that the prime issue is deprivation of his right to counsel at a critical stage of the proceedings. He was brought into the presence of the court, with the prosecuting attorney present, interrogated about his prior convictions, and asked about his intention to change his plea to guilty when his attorney could not be present. Other issues asserted by Duffy are that his appellate counsel was ineffective because the deprivation of right to counsel at a critical stage of the proceedings was not raised in his initial appeal and,

in an appeal from the denial of a motion to correct sentence, Duffy contends the sentences imposed were unlawful because they were disproportionate and disparate when compared to the sentences received by his accomplices.

We hold that the record does not sustain a claim of ineffective assistance of counsel with respect to the failure to advise Duffy of the prospect of consecutive sentences. Since the record demonstrates that Duffy was represented by counsel in connection with his change of pleas from not guilty to guilty, he has waived the claim of deprivation of counsel at a critical stage of the proceedings, although we note that the appearance was not truly a critical stage of the criminal proceedings. Duffy's right to counsel under either the Constitution of the United States or the Constitution of the State of Wyoming was not infringed. We hold no error occurred in the denial of his motion to correct an illegal sentence; the writ of certiorari in this case, in light of the facts disclosed by the record, was improvidently granted, and no error is sustained by either Duffy's brief or argument. The order of the trial court is affirmed, and any additional relief is denied.

In his Brief of Appellant, Duffy makes the following formal statement of the issues:

I. Whether Mr. Duffy was denied counsel at a critical stage in the proceeding and was forced to make statements against his interest without benefit of counsel, thus violating his Fifth, Sixth, Eighth and Fourteenth Amendment rights.

II. Whether Mr. Duffy was denied effective assistance of counsel during the proceedings in violation of his Fifth, Sixth, Eighth and Fourteenth Amendment rights.

III. Whether Mr. Duffy was denied his right to equal protection of the law and his Eighth Amendment protections by the disparate treatment and disproportional sentences he received.

---

* Chief Justice at time of oral argument.

As Respondent and Appellee, the State of Wyoming says that these are the issues:

1. Did Appellant's appearance, without counsel, at an aborted change of plea hearing, result in a violation of his Sixth Amendment right to counsel?

2. Was Appellant denied his right to effective assistance of counsel when he was not advised of the possibility of consecutive sentences and was appellate counsel ineffective for failing to raise this issue on appeal?

3. Was the Appellant denied equal protection and due process of law by way of a disparate and disproportionate sentence?

This is the third time Duffy has been before this court attacking his conviction of December 11, 1985 for a violation of Wyo. Stat. § 6–1–201(a) and (b)(i) (June 1983 Repl.) for being an accessory before the fact to the crime of aggravated robbery, as defined in Wyo.Stat. § 6–2–401(c)(ii) (June 1983 Repl.), and Wyo.Stat. § 6–1–303(a) (June 1983 Repl.) for conspiracy to commit burglary. In his first appeal, which we shall style *Duffy I* and is cited as *Duffy v. State*, 730 P.2d 754 (Wyo.1986), Duffy contended that the sentences that were imposed violated the indeterminate sentencing provision then in effect and found in Wyo.Stat. § 7–13–201 (1977). He also contended he was entitled to credit for time he had served in the Fremont County Jail while awaiting trial and that his sentences constituted an abuse of discretion. In that case, relief was denied as to all Duffy's allegations of error.

In his next appeal, which we shall style as *Duffy II* and which is cited as *Duffy v. State*, 789 P.2d 821 (Wyo.1990), Duffy argued that his conviction under the statute proscribing accessory before the fact of aggravated robbery and the statute proscribing conspiracy to commit burglary subjected him to double jeopardy. He there contended he had been prejudiced by the failure of the trial court to advise him of the possibility of consecutive sentences, and he reasserted the claim that his sentences were unlawful, arguing on that occasion that the sentences imposed inhibited his right to obtain a deduction for good time in connection with service of his sentence. As we did in the first appeal, this court affirmed the trial court in that case, finding no error in the proceedings and denying the relief sought.

The facts relating to the initial criminal offense are adequately articulated in *Duffy II*. We quote from that case:

The record demonstrated that Duffy, while he was incarcerated in Castle Rock, Colorado, had planned the robbery of his grandmother. He did this by telephone calls to two accomplices in Wyoming. Duffy explained to them how to gain entry into his grandmother's house and told them where they probably would find her valuables. The entire plan was that the two fellow conspirators would burglarize the grandmother's home, which was located in Fremont County, Wyoming, and they then would travel to Colorado to help Duffy escape from incarceration.

The two partners in crime went to the grandmother's home in accordance with the plan. One waited outside in a car while the other broke a window of the home to gain entry. The grandmother was awakened by the sound of the breaking glass, and she got up and went to the place where she had heard the noise. There, she discovered the burglar reaching through the broken window and holding a pistol in his hand. He ordered the grandmother to unlock the front door and, when she complied, he entered the house and demanded that she lead him to the safe where she kept her money. The grandmother took him into the bedroom where he removed a .38 caliber pistol from a nightstand. Duffy had told him of the location of that firearm. The robber then insisted that the grandmother show him her other valuables, and she complied with that demand. She took him throughout the house, showing him whatever valuable property he asked for. The robber collected the property in a pillowcase and returned to the waiting vehicle. Police officers successfully apprehended both principals before they could carry out the plan to help Duffy

escape, and both of them confessed the robbery to the investigating officers, implicating Duffy in their statements.

*Duffy II*, 789 P.2d at 824.

We turn first to Duffy's stated second issue of ineffective assistance of trial counsel in connection with his plea. If that challenge were sustained, then the plea of guilty could not serve as a waiver of his claim of deprivation of counsel at a critical stage of the proceedings. It, therefore, becomes the key issue to be resolved in this case. In Duffy's petition, in connection with the writ of certiorari that was granted, his claim of ineffective assistance of trial counsel is predicated only on the failure of trial counsel to inform him of the possibility of consecutive sentences. We consider only that claim of the failure of trial counsel because any questions relating to preparation and competence of trial counsel, apart from the failure to advise Duffy of the possibility of consecutive sentencing, must be considered *res judicata* pursuant to *Stogner v. State*, 792 P.2d 1358 (Wyo.1990). Duffy's argument is that because his appointed trial counsel did not inform him of the possibility of consecutive sentencing, his plea of guilty was not voluntary. He contends that, had he known of the possibility of consecutive sentencing, he would not have entered a guilty plea.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), the Supreme Court of the United States articulated the process to be invoked in considering the question of ineffective assistance of counsel. The court said that, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064. It is to be noted that the court was focused upon the impact on a trial. In that case, the Supreme Court then developed a tandem analysis for determining whether counsel's conduct had so undermined the adversarial process that the trial could not

be relied upon as having produced a just result. It required first, that the accused must demonstrate counsel's performance was deficient. Secondly, the deficiencies demonstrated prejudiced the defendant in some manner.

 For purposes of this case, we will accept, without deciding, that the failure to inform a defendant of the maximum possible sentence before he enters a plea of guilty may be deficient performance on the part of counsel. The second step in the *Strickland* analysis, however, must be demonstrated, and the requisite prejudice is not present here. While counsel may not have advised Duffy of the potential of consecutive sentencing, the record demonstrates that he clearly was aware of the possibility of consecutive sentencing and, therefore, no prejudice attached to counsel's failure. In this regard, the record of the proceedings on October 15, 1985, upon which Duffy centers his arguments concerning deprivation of counsel at a critical stage of the proceedings, the following colloquy occurred between Duffy and the trial judge:

> THE COURT: Aggravated robbery is not less than five or more than twenty-five years, if I misspoke. Do you understand that?
>
> MR. DUFFY: Yes, I do.
>
> THE COURT: And you understand the maximum penalty for burglary is ten years?
>
> MR. DUFFY: Yes, I do.
>
> THE COURT: Then do you understand if you were to plead guilty you could be looking at thirty-five years maximum?
>
> MR. DUFFY: Yes, I do.

With this information clearly emphasized to Duffy on that occasion, there is no possibility that Duffy was prejudiced by the failure of his trial attorney to reiterate that advice.

We next consider the assertion that appellate counsel was ineffective. That argument depends upon a conclusion that trial counsel was ineffective and that issue should have been raised by the appellate counsel in *Duffy I*. We have held that the failure of the trial attorney to advise Duffy

of the possibility of consecutive sentences did not constitute ineffective assistance of counsel, the element of prejudice being absent. It follows that we cannot conclude that any failure on the part of appellate counsel in failing to assert this issue amounted to ineffective assistance.

 We turn then to Duffy's presentation of what he perceived to be the major problem in the case. Both by brief and at argument, Duffy earnestly and vigorously contended he had been deprived of the right to be represented by counsel at a critical stage of the proceedings. Neither party to this appeal considered the impact upon this case of *Zanetti v. State,* 783 P.2d 134 (Wyo.1989), which normally would control the disposition of this contention. The holding in *Zanetti* is that a claim of denial of the right to a speedy trial, a non-jurisdictional claim, is forfeited by a plea of guilty. In *Zanetti,* we quoted from *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), as follows:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea * * *.

*Zanetti,* 783 P.2d at 138.

For purposes of invocation of the forfeiture rule, there is no logical distinction between a right to a speedy trial and a right to counsel. Both of these individual rights are encompassed in the same provision in both the state and the federal constitutions.[1] Since we have ruled that there was no ineffective assistance of counsel in connection with the entry of the guilty plea by Duffy, forfeiture is an appropriate resolution. An alternative disposition could be achieved under the doctrine of waiver on the ground that the improper denial of counsel is a non-jurisdictional defect. *Davila v. State,* 831 P.2d 204 (Wyo.1992).

Nevertheless, because of the critical nature of the claim, we examine its validity. The material facts relating to this claim by Duffy begin with the change of plea hearing set for October 15, 1985. The only stated purpose of that hearing was to receive a change of plea from Duffy. Present in the courtroom were the trial judge, the prosecuting attorney, and Duffy. Because of a scheduling conflict, the assistant public defender assigned to Duffy's case was not present, although that attorney had filed a motion for a continuance of the hearing. Initially, the motion for continuance was denied by the trial judge, and the judge then asked Duffy some preliminary questions relating to his educational background, his prior criminal record, and whether he understood the charges against him. It was at that time the trial judge informed Duffy of the potential consequences of entering a guilty plea, specifically telling Duffy he could face a maximum of thirty-five years in prison.

The critical dialogue between the trial judge and Duffy with respect to this issue is:

> THE COURT: Okay. Now, the first thing I want to know, Mr. Duffy, is, you know, you have the right to have a lawyer present, your lawyer present with you when you change your plea; do you understand that?
>
> MR. DUFFY: Yes, I do.
>
> THE COURT: Knowing that, is it your desire to waive or give up the right to

---

1. In all criminal prosecutions the accused shall have the right **to defend in person and by counsel,** to demand the nature and cause of the accusation, to have a copy thereof, to be confronted with the witnesses against him, to have compulsory process served for obtaining witnesses, and **to a speedy trial by an impartial jury** of the county or district in which the offense is alleged to have been committed.

Wyo.Const. art. 1, § 10 (emphasis added).
In all criminal prosecutions, the accused shall enjoy **the right to a speedy and public trial,** by an impartial jury of the State and district wherein the crime shall have been committed, * * * and **to have the Assistance of Counsel for his defense.**
U.S. Const. amend. VI (emphasis added).

have your attorney present so we can get this change of plea over with?

MR. DUFFY: No, your Honor. I talked to my lawyer last week and she wants to hold off. I'm not going to change my plans. I don't plan on waiting down the line and changing back for jury trial, you know, but I want my lawyer here with me when I do change my plea.

THE COURT: All right. In other words, it's your desire to plead guilty whether we do it now or later.

MR. DUFFY: Yeah, now or later. I'm not going to change my mind.

THE COURT: And you're going to plead guilty; is that correct?

MR. DUFFY: Yes, I am. * * *.

The essence of Duffy's argument is that this dialogue with the trial court, in the absence of his counsel, amounted to a violation of his right under the Sixth Amendment to the Constitution of the United States to counsel and the same right as preserved in Article 1, Section 10, of the Constitution of the State of Wyoming. In a number of cases before the Supreme Court of the United States, the right to counsel under the Sixth Amendment has been analyzed and articulated. That court has recognized that the period from arraignment to trial constitutes "perhaps the most critical period of proceedings." *Powell v. State of Alabama*, 287 U.S. 45, 57, 53 S.Ct. 55, 59, 77 L.Ed. 158 (1932). Because of the critical nature of this period, the right to counsel must be satisfied. In *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Court established a two-stage process to be invoked to determine whether a proceeding is "critical," and whether prejudicial error could flow from it. The Court there stated that the confrontation between the Court and a defendant, without counsel, must be analyzed to determine whether it creates "potential substantial prejudice to defendant's rights." *Wade*, 388 U.S. at 227, 87 S.Ct. at 1932. The succeeding step of the analysis is invoked to determine if the presence of counsel either would, or potentially could, protect the rights of the accused.

█ The defendant's rights are jeopardized if the defendant makes some sort of admission against penal interest, loses a potential defense, or furnishes a plea of guilty or *nolo contendere*. We essentially have adopted the tests articulated in *Powell* and *Wade*. In *Hoskins v. State*, 552 P.2d 342, *reh'g denied*, 553 P.2d 1390 (Wyo.1976), *cert. denied*, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977), the Court gave instructions to a deadlocked jury, after it had been advised by the jury that it could not reach a verdict. Defense counsel was not present when those instructions were given, and this Court analyzed the instructions to determine if they were prejudicial to the defendant. The Court concluded that they were not prejudicial and, based upon this conclusion, held that the absence of counsel did not prejudice the defendant because there was, "[n]o way in which the defendant was or could have been prejudiced by the absence of counsel." *Hoskins*, 552 P.2d at 351.

█ In Duffy's case, he answered questions at the proceeding on October 15, 1985, regarding his prior convictions, his age, and his educational background. None of the information that Duffy furnished to the Court was prejudicial. In fact, the trial court would have received all of this information in connection with a pre-sentence report prepared pursuant to Wyo.R.Crim.P. 33(c)(2). None of the questions from the judge related to the specific crime at issue, or any potential defenses Duffy might have utilized in a trial. Prior to making any inquiry as to Duffy's plea, the trial judge clearly informed Duffy of his right to have counsel present before he changed his plea, and Duffy did not waive that right. No plea was entered at the proceeding about which complaint was made. After Duffy refused to enter a plea, the questions of the trial judge related only to his intention to enter a guilty plea. The trial judge was attempting to determine whether he should allocate calendar time for a four-day jury trial in December, or whether time for a change of plea hearing would be adequate. The net effect was that the change of plea hearing was continued until Duffy's counsel could be present.

In our view, the questions with respect to Duffy's intention were not prejudicial for at least two reasons. The first is that Duffy did enter a guilty plea, with counsel present, a full month after the hearing on October 15, 1985. Duffy had ample time to confer with counsel and consider the implications of his decision and, as we have indicated, the applicable rule results in forfeiture of his claim of deprivation of counsel on October 15, 1985. The second reason is that no statement as to Duffy's intention to make a particular pleading resulted in any advantage to the State or to the trial court. Duffy was in no way prevented from maintaining his plea of not guilty, and the exacting procedures articulated in Wyo.R.Crim.P. 15, which must be complied with before a plea of guilty is considered binding, afford ample protection. Had Duffy chosen not to enter a plea of guilty at some later time and persisted in his plea of not guilty, he would have enjoyed all constitutional rights afforded a defendant in a criminal case.

Duffy contends that any proceeding occurring between arraignment and trial must be considered a critical stage of the proceedings and any contact between the accused and the State is a *per se* violation of his right to counsel. Duffy describes any critical stages as those in which the defendant must deal with the government or the court. The argument presented by Duffy, however, ignores the analysis that is demanded under *Powell, Wade,* and *Hoskins.* We do not, in any way, condone proceedings between the State and the accused at which the accused is not represented by counsel. Any such proceeding must be analyzed pursuant to those cases upon future review. In every case, the issue could be easily avoided. In this instance, however, the elements of a critical stage of the proceeding as defined in *Wade* are not present and, consequently, we are satisfied that Duffy's constitutional rights were not violated even if the forfeiture doctrine were not invoked.

The final issue asserted by Duffy in this case is that the sentence he was given was disproportionate in comparison to the sentences his accomplices received. In *Duffy I,* the issue of an unlawful sentence was presented, and we upheld that sentence as being "well within the bounds of reason under the circumstances." *Duffy I,* 730 P.2d at 758. In contending in *Duffy I* that the sentence was unlawful, no argument was presented that it was unlawful because disproportionate or disparate in comparison to the sentences of Duffy's accomplices. In our view, a contention in one case that the sentence is unlawful, followed by a contention that it is disproportionate in another, simply shifts the focus of the attack from the sentence itself to a comparison of Duffy's sentences with other sentences. In *Pote v. State,* 733 P.2d 1018 (Wyo.1987), we refused to permit an appellant to circumvent the doctrine of *res judicata* by simply shifting the focus of his attack.

Furthermore, even if Duffy had presented evidence relating to the sentences of his accomplices in the first appeal, that would not have changed the outcome. The sentencing system in vogue in Wyoming necessarily vests a substantial degree of discretion in the trial court. The trial judge must weigh the severity of each individual's involvement in the crime, his or her criminal history, and the defendant's needs with respect to rehabilitation. *Roose v. State,* 753 P.2d 574 (Wyo.1988). Because our sentencing system affords this discretion to the trial court, we do not find that discretion to be abused simply because sentences of different lengths are given to one or more co-defendants.

We think the explanation of the propriety of Duffy's sentence, in *Duffy I,* is apropos:

The sentences imposed in this case were well within the bounds of reason under the circumstances. Appellant had committed five prior felonies and was serving time for his most recent crime when he planned the armed robbery of his grandmother. Apparently his prior prison stays had no rehabilitative effect, and the district court correctly concluded that he represented a continuing threat to others. The aggravated robbery and burglary which he planned were serious

crimes that involved threatened violence to a particularly vulnerable victim. There were no mitigating factors.

It is perfectly clear why appellant received the most severe sentences that could have been legally imposed—he earned them.

*Duffy I,* 730 P.2d at 758.

After a complete evaluation of the record in this case, we are satisfied that the writ of certiorari was improvidently granted. The proceedings complained of did not infringe upon the constitutional rights of Duffy, and the rulings of the trial court are affirmed. The order denying the motion to correct an unlawful sentence also is affirmed.

URBIGKIT, Justice, dissenting.

I join with Justice Peck of the Vermont Supreme Court in his introduction in dissent in *State v. Schaefer,* 599 A.2d 337, 349 (Vt.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 981, 117 L.Ed.2d 144 (1992) (footnote omitted), involving media access, when he said:

> In considering the merits of the majority opinion in this case, I was reminded of a brief exchange, contained in a dialogue between Hamlet and that meddlesome old fussbudget Polonius in Shakespeare's play. Finding the Prince reading a book, the old man inquires, "What do you read, my lord?" To which Hamlet responds, "Words, words, words."

Although strongly stated, I also find some agreement in the present disposition of this third *Duffy* appeal with characterization of what this court has done to justify its judicial history in *Duffy v. State,* 730 P.2d 754 (Wyo.1986) (*Duffy I*) and *Duffy v. State,* 789 P.2d 821 (Wyo.1990) (*Duffy II*). "Notwithstanding the legalese which characterizes the majority opinion, it is completely devoid of even a pretension of analysis, to say nothing of a genuine balancing." *Schaefer,* 599 A.2d at 349, Peck, J., dissenting (footnote omitted).

Any realistic analysis would recognize abject ineffectiveness of counsel in contribution to a highly inappropriate plea made in the face of the pure and certain promise of what would follow. The result: a maximum, maximum, maximum sentence of just as close as the trial court could provide to thirty-five years with consecutive sentences for one event. The guilty plea, without a proper effort to bargain for some relief, ignored every benefit which could be available from trial and none from this no-bargained plea. To say otherwise is just words, words, words. There was some chance that the jury would not be as vindictive as the second trial judge surely would be. Assertion of some defense would have been preferable. *Com. v. Licata,* 412 Mass. 654, 591 N.E.2d 672 (1992).

Furthermore, the trial court had a represented defendant brought before him in the absence of his counsel and the following extended exchange ensued where the trial judge was anguished that the public defender, resident some 200 miles away, was caught in a conflicting schedule:

> THE COURT: Please be seated. Court's in session. We're here with reference to number 4304. The Court notes the presence of the defendant Scott Lee Duffy; the State's being represented by * * * the County and Prosecuting Attorney's office. Mr. Duffy's attorney is not present. I believe she's in trial some other place.

> She's filed a motion for a continuance for the change of plea hearing which I've denied. Let me state for the record precisely why so the Supreme Court will understand what is going on here.

> My name is Bob Ranck. I live in Jackson, Wyoming. Court's being held in Lander, Wyoming. I don't run over here at every little drop of the hat. This case is presently set for jury trial in this courtroom in Lander on Monday, December 9, 1985 at 1:30 in the afternoon. I've got four days set aside for the trial of that case. I want to be able to schedule other cases for December and I'm not going to set this trial date aside until I know what Mr. Duffy's going to do on the record for certain. That's why I've changed this change of plea hearing for today because I've got to know so that I can have some control over my calendar.

In other words, * * *, the defendant's attorney, told me that the defendant is going to plead guilty. Okay. If I come over here December 9th to take a guilty plea and he changes his mind, then I'm stuck because I will have set other cases for trial other than this case.

The defendant is in jail and not being able to make bond and that puts me in a bad situation.

Mr. Duffy, do you generally understand what I've said?

MR. DUFFY: Yes, I do.

THE COURT: You see my problem?

MR. DUFFY: Yes.

THE COURT: All right. So I want to discuss the matter with you. Now, this is what I want to know. First of all, let me go over some things with you now that I need to go over for the record.

Are you under the influence of alcohol or drugs?

MR. DUFFY: No, I'm not.

THE COURT: Are you suffering from any mental defect or deficiency that could affect your ability to understand these proceedings?

MR. DUFFY: No, I'm not.

THE COURT: How old are you?

MR. DUFFY: Twenty-two.

THE COURT: And what's your educational background?

MR. DUFFY: GED.

THE COURT: How many felonies have you been convicted of?

MR. DUFFY: Five.

THE COURT: And how many misdemeanors?

MR. DUFFY: Two, I think. I'm not sure.

THE COURT: We know, then, you've been in court at least seven times, don't we?

MR. DUFFY: Yes.

THE COURT: The five felonies and the two misdemeanors.

MR. DUFFY: Well, no. Some of my felony cases were in the same court.

THE COURT: At the same time?

MR. DUFFY: At the same time, yes.

THE COURT: You understand what's going on here?

MR. DUFFY: Yes, I do.

THE COURT: Now, you understand that you're charged with being accessory before the fact to aggravated robbery, and conspiracy to commit burglary; you understand that?

MR. DUFFY: Yes, I do.

THE COURT: And you understand that the maximum penalty for aggravated burglary is not less than five or more than twenty-five years?

MR. DUFFY: Yes, I do.

THE COURT: And you understand the penalty for burglary is—I believe it's fourteen years or it is now ten years?

[COUNTY ATTORNEY]: Ten years, your Honor. Did the Court mean to say the first penalty for aggravated robbery or did I mishear the Court say burglary on the first one?

THE COURT: Aggravated robbery is not less than five or more than twenty-five years, if I misspoke. Do you understand that?

MR. DUFFY: Yes, I do.

THE COURT: And you understand the maximum penalty for burglary is ten years?

MR. DUFFY: Yes, I do.

THE COURT: Then do you understand if you were to plead guilty you could be looking at thirty-five years maximum?

MR. DUFFY: Yes, I do.

THE COURT: All right. And do you understand me now?

MR. DUFFY: Yes, I do.

THE COURT: And did you understand the Court when you were arraigned; when you were advised of the charges and your date for your trial was set and those kinds of things?

MR. DUFFY: Yes, I did.

THE COURT: Okay. Now, the first thing I want to know, Mr. Duffy, is, you know, you have the right to have a lawyer present, your lawyer present with you when you change your plea; do you understand that?

MR. DUFFY: Yes, I do.

THE COURT: Knowing that, is it your desire to waive or give up the right to have your attorney present so we can get this change of plea over with?

MR. DUFFY: No, your Honor. I talked to my lawyer last week and she wants to hold off. I'm not going to change my plans. I don't plan on waiting down the line and changing back for jury trial, you know, but I want my lawyer here with me when I do change my plea.

THE COURT: All right. In other words, it's your desire to plead guilty whether we do it now or later?

MR. DUFFY: Yeah, now or later. I'm not going to change my mind.

THE COURT: And you're going to plead guilty; is that correct?

MR. DUFFY: Yes, I am. I got a paper from the Court that moved my court date from the 6th of November to the 14th of November for Prelim or—

THE COURT: For what?

MR. DUFFY: I think it was to pick the jury trial, pretrial or something like that.

THE COURT: That was a motion hearing.

MR. DUFFY: Yeah. Okay.

THE COURT: But that was before I knew you were going to plead guilty. All right. Let me ask you this: Is the 14th of November a good time for me to take your plea of guilty?

MR. DUFFY: Yes, your Honor.

THE COURT: In other words, instead of having a motion hearing we can change that to a change of plea hearing?

MR. DUFFY: Yes.

THE COURT: Okay. Anything else?

[COUNTY ATTORNEY]: Nothing from the State, your Honor.

THE COURT: All right. You're remanded to the custody of the sheriff. Thank you.

Appellant's counsel, who was not present at the ex parte conducted session and burdened by lack of practical experience in criminal trials at that time, later filed an affidavit dated November 15, 1990:

Mr. Duffy was charged with conspiracy to commit a burglary and aiding and abetting a robbery, charges which together carried a maximum sentence of 35 years. Since I had never experienced Judge Ranck before, nor a judge that had ever imposed consecutive rather than concurrent sentences, it never occurred to me that these sentences could be made consecutive and for the maximum amount of time. I advised Mr. Duffy consecutive sentences was not possible. But for this advi[c]e, Mr. Duffy would not have pled as charged.

Duffy had been held responsible for the public defender's scheduling problems and the intransigence of the trial court about a guarantee that a guilty plea would be entered to *both* criminal charges. What is wrong here is that inexperienced counsel was not present when the trial court gave the legal advice to her client and obtained Duffy's commitment to the plea. Otherwise, she would have known that the judge *probably would give a maximum, maximum, maximum sentence*—and he did just what would have been expected. Counsel, inexperienced or expert, needs fully developed knowledge to provide competent legal advice and assistance.

Any suggestion that the conduct of this session in the absence of counsel met criteria of due process and right to counsel or that prejudice did not result can only again come into characterizations of words, words, words. The enforcement and acceptance of a defendant's agreement to plead guilty surely constitutes a critical phase of the criminal proceeding and even more assuredly cannot be treated as harmless error. *Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978).

In my perception, Duffy adequately and accurately states the status of United States constitutional law in his appellate brief:

A critical stage has been defined in *United States v. Wade,* 388 U.S. 218 [87 S.Ct. 1926, 18 L.Ed.2d 1149] (1967), to include "any stage of the prosecution, formal or informal, in court or out,

where counsel's absence might derogate from the accused's right to a fair trial" 388 U.S. at 226 [87 S.Ct. at 1932]. The question to be answered is "whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability to counsel to help avoid that prejudice." 388 U.S. at 227 [87 S.Ct. at 1932]. Critical stages are those steps "in the criminal justice process 'where the results might well be the accused's fate.'" *Maine v. Moulton,* 474 U.S. 159, 170 [106 S.Ct. 477, 484, 88 L.Ed.2d 481] (1985), *quoting Wade,* 388 U.S. at 224 [87 S.Ct. at 1931].

Certainly, the district court erred in concluding that a judge's inquiry "And you're going to plead guilty; is that correct?" * * *, is not a critical stage. Mr. Duffy's fate was settled when he answered the inquiry without counsel despite his invocation of his right to counsel.

Since Mr. Duffy was deprived of his right to counsel at a critical stage, a reversal is required. When a defendant is deprived of the presence and assistance of his attorney during a critical stage, the error "can never be treated as harmless error." *Holloway v. Arkansas,* 435 U.S. 475, 489 [98 S.Ct. 1173, 1181, 55 L.Ed.2d 426] (1978). Here, Mr. Duffy must be returned to his circumstances prior to October 15, 1985, when Judge Ranck inquired "And you're going to plead guilty; is that correct?" Mr. Duffy asked for counsel, and he was entitled to have counsel present to advise him when he answered the judge.

The confining invalidity of the majority opinion is its omission to recognize or acknowledge that *counsel* has the right to be present at any critical stage of the prosecution so as to be fully informed. Perhaps Duffy should have known that this was no bargained plea; counsel did not. Consequently, counsel could not properly perform her function in representation of Duffy. Therefore, we have an uninformed and inexperienced defense counsel becoming part of what, under the circumstances, was a plea under the most improvident circumstances and with the most certain adversity that could possibly be conceived.

The Sixth Amendment right to proper advice and assistance of counsel unalterably established in the United States Constitution but no less absolute by specific provision of the Wyoming Constitution, Wyo.Const. art. 1, § 10, has a widely applied realization in current decisions of the United States Supreme Court. *See, e.g., Powell v. Texas,* 492 U.S. 680, 109 S.Ct. 3146, 106 L.Ed.2d 551 (1989); *Satterwhite v. Texas,* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) (involving psychiatric examinations); and *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988); then followed by *Michigan v. Harvey,* 494 U.S. 344, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990) (involving re-instituted interrogation after a request for counsel).

What has occurred in this case with the trial court extracting a promise of a guilty plea from Duffy in the absence of counsel differs not at all in moral or legal responsiveness to constitutional rights from those re-instituted interrogations as considered in *Harvey,* 494 U.S. 344, 110 S.Ct. 1176; *Roberson,* 486 U.S. 675, 108 S.Ct. 2093; and most recently in *Minnick v. Mississippi,* —— U.S. ——, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). Like *Minnick,* Duffy was compelled to attend an involuntarily conducted interrogative session in the absence of protective counsel. It is bad enough for the accused to be badgered by the police, *Minnick,* —— U.S. at ——, 111 S.Ct. at 489, but here it is the trial court which conducts that inquisitorial and highly prejudicial session.

Like confrontation, which has a functional component, *Maryland v. Craig,* 497 U.S. 836, ——, 110 S.Ct. 3157, 3166, 111 L.Ed.2d 666 (1990), the presence of counsel at all proceedings where the accused is forced to attend is not just appropriate, it is the essence of the due process understanding which is intrinsic to American law. This case bespeaks with the interrogation conducted in the absence of counsel of hiding behind the shadows. *Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 2801, 101 L.Ed.2d 857 (1988). Clearly, here, the right of Duffy to

the assistance of counsel, *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), with what the judge did in obtaining a non-counseled commitment to plead guilty, is no different from what the police did in the acquisition of inveigled, incriminatory information in the absence of counsel.

It has been often quoted and we should surely not now ignore the very basics of criminal justice thoughtfully delineated by Justice Sutherland in *Powell v. State of Alabama,* 287 U.S. 45, 68–69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932) and restated in *Moulton,* 474 U.S. at 169, 106 S.Ct. at 483–84 by Justice Brennan:

> "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every stage of the proceedings against him."

If the accused has a right to have counsel present pretrial during the investigative interrogation, *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the same right does not eviscerate and disappear when the court proceeding begins. *Holloway,* 435 U.S. 475, 98 S.Ct. 1173. It was well said in *Holloway,* 435 U.S. at 489, 98 S.Ct. at 1181 (quoting *Chapman v. State of California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967)) that "the assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.' " *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) should not be so casually and completely disregarded by this court's present adaptation of some "harmless error" justification for denied access of Duffy to assistance of counsel. *See Hamilton v. State of Alabama,* 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). *White v. State of Maryland,* 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) certainly teaches the intrinsic character of Sixth Amendment jurisprudence to require a contrary result. *Cf. Kenney v. Tamayo–Reyes,* —— U.S. ——, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) (addressing the sufficiency of the state court record as an issue that Duffy can well recognize that he has not bypassed any conceivable effort to achieve justice in his litigative pursuit in this case). What the prosecution cannot, within the containment of Sixth Amendment protections, do by undercover agents to circumvent its protection, *Moulton,* 474 U.S. 159, 106 S.Ct. 477; *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), should surely not be done in this critical, non-counseled stage of the criminal process where the trial court adversely adjusts constitutional rights of a defendant because the public defender has conflicting responsibilities within an overburdened work load. *Cf. Illinois v. Perkins,* 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990).

In the abject effort to throw the umbrella of harmless error over this appeal and consequently ignore violations of due process, this court rewrites not only established principles found in federal case law, but also the constitutional heritage of our state and comparable state jurisdictions. In a case where the impatience of the trial court vitiated the resulting conviction when unwilling to wait until defense counsel could be available, the appellate court related the determining concepts:

> " 'A person charged with a felony in a state court has an unconditional and absolute constitutional right to a lawyer. *Gideon v. Wainwright,* 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799 (1963)]. This right attaches at the pleading stage of the criminal process. *Rice v. Olson,* 324

U.S. 786 [65 S.Ct. 989, 89 L.Ed. 1367 (1945)], and may be waived only by voluntary and knowing action. *Johnson v. Zerbst*, 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461 (1938)]; *Carnley v. Cochran*, 369 U.S. 506 [82 S.Ct. 884, 8 L.Ed.2d 70 (1962)]. Waiver will not be "lightly presumed," and a trial judge must "indulge every reasonable presumption against waiver." *Johnson, supra* [304 U.S.] at 464 [58 S.Ct. at 1023].' *Boyd v. Dutton*, 405 U.S. 1 (92 SC 759, 30 LE2d 755 [(1972)])." *Robertson v. State*, 162 Ga. App. 873, 874, 293 S.E.2d 477 [(1982)].

*Callaway v. State*, 197 Ga.App. 606, 398 S.E.2d 856, 857 (1990).

The Wyoming Supreme Court has surely not been over-enthusiastic in protecting the right to counsel under Wyo.Const. art. 1, § 10 since current trends in the federal system have developed; but even so, nothing akin to what has occurred in this case has ever been countenanced by a prior reported decision of this court. *Cf. Davila v. State*, 831 P.2d 204 (Wyo.1992), Urbigkit, C.J., dissenting and *Robinson v. State*, 831 P.2d 231 (Wyo.1992), Urbigkit, C.J., dissenting. *See Murray v. State*, 776 P.2d 206 (Wyo.1989); *Kallas v. State*, 776 P.2d 198 (Wyo.1989); and *Amin v. State*, 774 P.2d 597 (Wyo.1989). *See also Engberg v. Meyer*, 820 P.2d 70, 104 (Wyo.1991), Urbigkit, C.J., dissenting in part and concurring in part.

Tragically, this appeal produces a considerably more damaging imprudence than only ignoring the esoteric issues of the judicial responsibility to support, obey and defend constitutional rights. In this case, the trial court neglected, and we now absolve violation of, this court's own rules of criminal procedure. W.R.Cr.P. 6 (prior to March 24, 1992) (emphasis added) provided:

(a) *Right to assigned counsel.*—Every defendant who is unable to obtain counsel shall be entitled to have counsel assigned to represent him *at every stage of the proceedings* from his initial appearance before the commissioner or the court through appeal, unless he waives such appointment.

In complete consistency with the prior rule and following with close identity to the similarly numbered Federal Rules of Criminal Procedure, this court has now established in requirement for the conduct of the Wyoming courts in criminal proceedings:

(a) Presence required.—The defendant shall be present at the initial appearance at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

W.R.Cr.P. 43 (March 24, 1992).

(a) Right to assigned counsel.—Every defendant who is unable to obtain counsel is entitled to be represented by assigned counsel *at every stage of the proceedings* from the filing of an indictment, information or citation through appeal, unless that right is waived.

W.R.Cr.P. 44 (March 24, 1992) (emphasis added).

Lawlessness need not start with the classified lawbreakers. It can also be the result of unwillingness to follow the law by those generically described as the lawmakers. In requiring a represented defendant with appointed counsel to come before the court for this kind of a session in the absence of that counsel, the trial court, as a lawmaker, became a lawbreaker. My reactivity to forcing an accused to appear without representation is more completely and explicitly offered in *Davila*, 831 P.2d 204, Urbigkit, C.J., dissenting.

The Notes of Advisory Committee on Rules, 1944 Adoption, for F.R.Cr.P. 44 relate:

This rule is a restatement of existing law in regard to the defendant's constitutional right of counsel as defined in recent judicial decisions. * * *

\* \* \* \* \* \*

[That] present extent of the right of counsel has been defined recently in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; *Walker v. Johnston*, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 [(1941)]; and *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed.

680 rehearing denied 315 U.S. 827, 62 S.Ct. 629, 637, two cases, 86 L.Ed. 1222 [(1942)]. The rule is a restatement of the principles enunciated in these decisions.

Federal Criminal Code and Rules 145 (1991 rev. ed.)

Furthermore, it is recognized: "The right to assignment of counsel is not limited to those financially unable to obtain counsel. If the defendant is able to compensate counsel but still cannot obtain counsel, he is entitled to the assignment of counsel even though not to free counsel." *Id.* at 146, 1966 Amendment. This court's recent decisions in the conflict of interest representation of joint defendant cases, *Kenney v. State,* 837 P.2d 664 (Wyo.1992) and *Shongutsie v. State,* 827 P.2d 361 (Wyo. 1992), provide our compelling recognition of the right to the assistance of counsel and, consequently, effective counsel. Surely, where joint representation is disavowed, proceeding without any counsel is decisively more inappropriate.

The American Bar Association Standards for Criminal Justice provide:

Counsel should be provided *in all* criminal proceedings for offenses punishable by imprisonment, regardless of their denomination as felonies, misdemeanors, or otherwise. An offense is deemed to be punishable by imprisonment if the fact of conviction may be established in a subsequent proceeding, thereby subjecting the defendant to imprisonment.

I ABA Standards for Criminal Justice, 5–4.1 (1986).

The right to counsel is anchored in American law in concept of fundamental fairness within the Fourteenth Amendment, due process, *Powell,* 287 U.S. 45, 53 S.Ct. 55, and specifically required under the Sixth Amendment, *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The predominating substance of this intrinsic right to justice through both Fourteenth and Sixth Amendment concepts is irreplaceably established in *Gideon,* 372 U.S. 335, 83 S.Ct. 792. *See* 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 11.1 (1984 & Supp.1991). Overtly, here,

there is state interference creating ineffectiveness of counsel when proceedings are continued by the trial court in the absence of counsel who are faced with scheduling difficulties and are consequently unavailable. The United States Supreme Court has explicitly spoken regarding state restrictions which create counsel ineffectiveness. *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975); *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972); *Ferguson v. State of Georgia,* 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961). *See* 2 LaFave & Israel, *supra,* at § 11.8. Furthermore, state interference claims do not require a showing of actual prejudice to establish a Sixth Amendment violation. *Perry v. Leeke,* 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989). *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Not only is the concept of state interference demonstrable, but the results are indelibly written by counsel's actual performance. *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). "[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Id.* at 658, 104 S.Ct. at 2046. The driving constitutional concept was clearly and decisively stated by Justice Stevens in authoring the majority opinion:

An accused's right to be represented by counsel is a fundamental component of our criminal justice system. Lawyers in criminal cases "are necessities, not luxuries." Their presence is essential because they are the means through which the other rights of the person on trial are secured. Without counsel, the right to a trial itself would be "of little avail," as this Court has recognized repeatedly. "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have."

The special value of the right to the assistance of counsel explains why "[i]t has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 [90 S.Ct. 1441, 1449, n. 14, 25 L.Ed.2d 763] (1970). The text of the Sixth Amendment itself suggests as much. The Amendment requires not merely the provision of counsel to the accused, but "Assistance," which is to be "for his defence." Thus, "the core purpose of the counsel guarantee was to assure 'Assistance' at trial, when the accused was confronted with both the intricacies of the law and the advocacy of the public prosecutor." *United States v. Ash*, 413 U.S. 300, 309 [93 S.Ct. 2568, 2573, 37 L.Ed.2d 619] (1973). If no actual "Assistance" "for" the accused's "defence" is provided, then the constitutional guarantee has been violated. To hold otherwise

"could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel. The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment." *Avery v. Alabama*, 308 U.S. 444, 446 [60 S.Ct. 321, 322, 84 L.Ed. 377] (1940) (footnote omitted).

*Cronic*, 466 U.S. at 653–55, 104 S.Ct. at 2043–45 (quoting Walter V. Schaefer, *Federalism and State Criminal Procedure*, 70 Harv.L.Rev. 1, 8 (1956)) (footnotes omitted).

To summarize, Duffy was given the maximum, maximum, maximum sentence that could have possibly been given. His counsel was ineffective in being denied the opportunity to have been present at a court session where that foreordained result would have been clearly communicated by the statements and conduct of the trial judge. Consequently, we approve violation of our rules of criminal procedure, disdain a constitutional right guaranteed under state and federal constitutions to the full assistance of counsel, and continue to ignore in this third appeal that no matter how bad this young man may have been, fairness and justice were simply not provided. With one, and perhaps all of the other actors, *see Duffy I*, 730 P.2d 754 and *Duffy II*, 789 P.2d 821, now released from penal confinement following their brutal activities in this terrible crime, Duffy remains incarcerated with a confinement term, not benefitted by ameliorative legislation passed because of what occurred here, to perhaps still a total of thirty more years incarceration.

Scott Duffy did not have the guiding hand of counsel at every step in the proceedings against him, *Powell*, 287 U.S. 45, 53 S.Ct. 55. Consequently, he lacked competent counsel. *Cronic*, 466 U.S. 648, 104 S.Ct. 2039. *See* Charles Alan Wright, *Federal Practice and Procedure: Criminal 2d*, § 736 (1982). "Learned Hand said that justice is the tolerable accommodation of the conflicting interests of society." The American Law Institute, *Remarks and Addresses at the 67th Annual Meeting*, p. 3 (1990). In this case, I cannot be part of the toleration of this departure from constitutional protections and, consequently, I again dissent for this third appeal.